541 S.E.2d 611

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Melody Lynn ONAPOLIS, Defendant Below, Appellant.

No. 27060.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Nov. 13, 2000.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for the Appellee.

Howard G. Higgins, Jr., Morgantown, for the Appellant.

MAYNARD, Chief Justice:

The appellant, Melody Onapolis, requests that the indictment filed against her by the State of West Virginia be dismissed for failure to follow the requirements of the Interstate Agreement on Detainers (IAD), W.Va. Code §§ 62–14–1 to 7. The Circuit Court of Monongalia County denied the appellant's motion to dismiss the indictment and motion for reconsideration. We believe the circuit court properly denied both motions.

On August 6, 1998, the appellant was incarcerated in the Ohio Reformatory for Women. Embezzlement and forgery charges were pending against her in the Circuit Court of Monongalia County, West Virginia. Pursuant to Article IV of the IAD, the circuit court signed a request for temporary custody of the appellant. This request was forwarded to the Governor of Ohio who received the correspondence on August 28, 1998. On August 11, a detainer was placed against the appellant. On September 10, 1998, the appellant was indicted in West Virginia on two counts of embezzlement and three counts of forgery. Each charge involved her employer, Suncrest Travel.

Pursuant to Article III of the IAD, the appellant requested disposition of the charges pending against her in West Virginia. She completed and signed the appropriate paperwork on September 30, 1998. The prosecuting attorney of Monongalia County received this documentation on October 13, 1998. The circuit court signed the prosecutor's acceptance of temporary custody offered in connection with a prisoner's request for disposition of a detainer. The appellant was then transferred to West Virginia on November 10, 1998. Her trial was scheduled to begin on December 7, 1998.

Upon arrival in West Virginia, the appellant filed an affidavit of eligibility for appointed counsel. On November 16, 1998, the court appointed counsel to represent her and advised the appellant of her criminal rights and responsibilities. The appellant was arraigned the following day. On December 3, 1998, a motion was filed by the appellant's counsel requesting that the trial be continued. On December 29, 1998, the court entered an agreed order granting the motion. The appellant's trial was rescheduled for April 7, 1999.

On January 11, 1999, the appellant filed a pro se motion to dismiss the indictment alleging that her speedy trial rights had been violated. Her attorney thereafter filed a motion to dismiss alleging that the appellant's trial date did not comply with the IAD. The circuit court denied the motions.

On April 6, 1999, the appellant wrote a letter to the court informing the judge that her trial was continued without her knowledge or consent and that her attorney was aware that she did not intend to go to trial. The following day she entered a conditional guilty plea to the entire indictment reserving the right to appeal the court's pre-trial rulings. Appellant's counsel thereafter filed a motion for reconsideration requesting that the court reconsider the motion to dismiss. The court declined to entertain this motion. Pursuant to the plea agreement, the appellant was sentenced to the penitentiary for three to thirty years. She was also ordered to make restitution to Nancy Kahn at Suncrest Travel in the amount of $1,179.00; to Erie Insurance Agency in the amount of $3,639.29; and to One Valley Bank in the amount of $9,293.83. The appellant was released on bond pending appeal. This appeal followed.

On appeal, the appellant alleges the lower court erred by refusing to grant her motion to dismiss the indictment for failure to bring her to trial within the time constraints of the IAD. She also contends that her motion to continue did not toll the running of the time limits contained in the IAD. The State argues that the trial court correctly found good cause to justify a continuance, and thus, the continuance tolled the running of the IAD's time limits. We agree.

The purpose of the IAD is to expedite and standardize procedures for the resolution of criminal charges pending against prisoners. W. Va.Code § 62–14–1, Art. I (1971). "The Agreement on Detainers, to which West Virginia is a party, is activated when a detainer is lodged against a prisoner in another party jurisdiction. W.Va.Code, 62–14–1 *et seq.*" Syllabus Point 1, *Moore v. Whyte*, 164 W.Va. 718, 266 S.E.2d 137 (1980). Pursuant to the Agreement, a prisoner incarcerated in another state may request final disposition of the untried charges pending against him or her in West Virginia or the jurisdiction in which an untried charge is pending may lodge a detainer and request temporary custody of the prisoner.

In the case *sub judice*, the State of West Virginia requested temporary custody of the appellant from the State of Ohio on August 6,

1998. This request was made pursuant to Article IV of the IAD which reads in part as follows:

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The appellant arrived in West Virginia on November 10, 1998. It was on this day that the one hundred twenty days began to run.

On September 30, 1998, the appellant requested disposition of the charges pending against her in West Virginia. The prosecutor received the documents on October 13, 1998. The appellant's request was made pursuant to Article III of the IAD which reads in part as follows:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The one hundred eighty days began to run on October 13, 1998. If an incarcerated defendant is not brought to trial within these statutory time limits, the IAD requires that the indictment, information or complaint be dismissed with prejudice. W.Va.Code § 62-14-1, Art. V(c) (1971).

This case presents two issues which we must consider. The first question presented to us is which Article governs when both the State and the prisoner initiate transfer under the IAD. In conjunction with that question, we must determine what effect, if any, a defendant's motion for continuance has on the statutory time limits.

Courts which have considered the question of whether Article III or Article IV governs when both the State and the defendant initiate transfer under the IAD have not reached the same result. In *Ullery v. State*, 988 P.2d 332 (Okl.Cr.App.1999), the Court of Criminal Appeals of Oklahoma concluded that courts nationwide take three different approaches to this problem. The court explained these approaches as follows:

> [A] few jurisdictions hold[ ] that where the defendant initiates Article III proceedings he invariably waives his Article IV rights (including the shorter time limit). These cases determine that, as Article IV procedures and Article III procedures are inconsistent, an Article III filing automatically waives those Article IV procedures favorable to the defendant. Other jurisdictions reject this approach and hold the determining factor is which party first initiates IADA procedures. Finally, several jurisdictions apply both Articles when both parties initiate IADA procedures and look to see which, if any, provisions have been violated in determining which time limit applies.

*Id.*, 988 P.2d at 340–41 (footnotes omitted). Oklahoma chose the third approach deeming it to be the "most balanced."

Due to the fact that the appellant requested a continuance before the time expired under either Article, we do not reach this issue today. Under Article III, the appellant's trial should have begun within 180 days of October 13, 1998, the day the prosecutor's office received the appellant's request for disposition. Under Article IV, the appellant's trial should have begun within 120 days after her November 10, 1998 arrival in West Virginia. The trial was originally scheduled to begin on December 7, 1998, well within the IAD's time constraints. Had she not requested a continuance, her trial presumably

would have begun on that date. Therefore, the question we must resolve is whether the statutory time limitations included in the IAD were tolled by a necessary or reasonable continuance.

On December 3, 1998, four days before her trial was to begin, the appellant through counsel filed a motion requesting that the circuit court grant a continuance, stating that counsel needed "adequate time to review discovery materials and prepare for trial." The circuit court granted the motion by filing an order titled Agreed Order Continuing Trial and Setting New Trial Date. The first paragraph of the order reads as follows:

> Counsel for the defendant, on a previous date, moved this Court to continue the trial in the above-styled matter due to counsel just being appointed. Counsel for the State has no objection to the continu[ance] and therefore counsel for the defendant and for the State jointly move this Court for a continuance in the trial of this matter.

The trial was rescheduled for April 7, 1999.[1]

In *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), the State of New York lodged a detainer under the IAD against an Ohio prisoner. The prisoner requested disposition of the detainer pursuant to Article III of the IAD. The prosecutor and defense counsel agreed to a trial date outside the time limits of the IAD. The defendant then moved to dismiss the indictment, arguing the IAD's time limit had expired. On appeal, the United States Supreme Court agreed with the trial court's conclusion that the defendant waived his rights under the IAD when his defense counsel agreed to a trial date beyond the statutory period. In commenting on the IAD, the Court said, "No provision of the IAD prescribes the effect of a defendant's assent to delay on the applicable time limits." *Id.,* 528 U.S. at 113, 120 S.Ct. at 663,

145 L.Ed.2d at 566. After discussing the availability of waiver, the Court stated that "[f]or certain fundamental rights, the defendant must personally make an informed waiver. For other rights, however, waiver may be effected by action of counsel." *Id.,* 528 U.S. at 114, 120 S.Ct. at 664, 145 L.Ed.2d at 566 (citations omitted).

The Court found that the IAD specifically contemplates that scheduling questions may be left to counsel. In concluding that counsel may indeed agree to a specified delay in trial, the Court explained:

> When that subject is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case. Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier. Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose.

*Id.,* 528 U.S. at 115, 120 S.Ct. at 664, 145 L.Ed.2d at 567. The Court hereby recognized that a defendant's lawyer must have full authority to manage the trial and stated that "[a]bsent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Id.* The Court concluded that scheduling matters are plainly among those for which agreement by counsel generally controls. The Court finally held that defense counsel's agreement to a trial date outside the IAD period barred the defendant from seeking dismissal on the ground that trial did not occur within the statutory period.

■ We, too, believe that counsel must have full authority to manage his or her client's trial and absent a demonstration of ineffectiveness, counsel's word on such matters is final. Trial management clearly in-

---

1. In her brief to this Court, the appellant states the reasons she believes the continuance did not toll the IAD's statutory time limits. She says the State failed to timely produce discovery material; she was not aware her attorney requested a continuance; and no hearing was held on the request for a continuance. In researching the record, we find that the motion for continuance was filed before the State responded to the discovery request. Also, appellant's counsel on appeal is the same counsel who represented her below. Counsel now contends that his client did not know he was requesting a continuance, and that, if she had known, she would have stopped him because she never intended to go to trial. He is, in essence, complaining about his own conduct. We find no merit in these assertions. We will discuss the necessity of a hearing later in this opinion.

cludes scheduling matters. The fact that the appellant's counsel instead of the appellant requested the continuance is of no consequence. We, therefore, hold that a defendant waives his or her rights under the IAD when the defendant or defendant's counsel requests or agrees to a trial date outside the statutory time limits.

This would end our discussion except that the appellant goes on to argue that the speedy trial clock was not tolled because the IAD provides specific language which covers continuances and that language was not followed in this case. The language to which she refers is "for good cause shown in open court, the prisoner or his counsel being present[.]" She contends the court did not hold a hearing in open court with herself or her counsel present. She reasserts that she did not know a request for a continuance was made.

We turn to the *Hill* case for guidance. In *Hill*, you will recall, defense counsel and the prosecutor agreed to a trial date outside the time limits of the IAD. After a jury trial, the defendant was convicted of second degree murder and robbery in the first degree. On appeal, the defendant argued the IAD seeks to limit situations in which delay is permitted by explicitly providing for "good-time continuances." Permitting other extensions of the time limits, he said, would override those limitations.

The Court reasoned that "[i]t is of course true that waiver is not appropriate when it is inconsistent with the provision creating the right sought to be secured[,]" but determined that was not the case under those circumstances. *Hill*, 528 U.S. at 116, 120 S.Ct. at 664–65, 145 L.Ed.2d at 567. The Court explained "necessary or reasonable continuance" as being the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection. The Court summed up by stating, "[T]he specification in that provision that the 'prisoner or his counsel' must be present suggests that it is directed primarily, if not indeed exclusively, to prosecution requests that have not explicitly been agreed to by the defense."

*Id.,* 528 U.S. at 116, 120 S.Ct. at 665, 145 L.Ed.2d at 567. The Court determined that waiver is indeed available and that agreement by the parties to an extension constitutes a good-cause continuance.

The court's holding in *Ullery* supports this result. In *Ullery,* both parties agreed to a trial date outside the IAD's time limits. In commenting on defense counsel's agreement to the trial date, the Court of Criminal Appeals of Oklahoma stated, "We find it reasonable to toll the IADA limits where the defendant requests or agrees to, and benefits from, the delay." *Ullery*, 988 P.2d at 342. The court found this constituted a necessary and reasonable continuance for good cause and concluded that the 88 days which elapsed between the agreement and trial were tolled.

 In the case at bar, the record clearly shows defense counsel requested and the State agreed to an extension beyond the IAD time limits. We believe this constitutes a necessary and reasonable continuance for good cause. We do not believe, as the appellant argues, that the continuance served only as a tactical advantage for the prosecutor and in no way equated good cause.[2] We, therefore, hold that the time limits contained in the IAD are tolled when a defendant or defense counsel requests or agrees to a delay in the defendant's trial. The days which elapse between the request or agreement and the trial are tolled. The trial court in this case did not err by refusing to dismiss the indictment for failure to try the appellant within the time constraints of the IAD.

We conclude that the circuit court committed no error by granting the continuance in this case. The appellant's trial was scheduled well within the time limits of the IAD and, absent the appellant's motion for continuance, would presumably have been held on December 7, 1998. The days which elapsed between this request and the trial are tolled.

Affirmed.

---

**2.** It is a rare instance indeed when we see defense counsel receiving specifically what he or she requested from the trial court and then complaining on appeal that the trial court granted the requested relief.