# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | **I.D. No. 1207010738** |
| | ) | |
| **JASON SLAUGHTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Date Submitted: December 13, 2016
Date Decided: January 3, 2017

*Upon Defendant's Renewed First Motion to Dismiss*
**DENIED**
*Upon Defendant's Second Motion to Dismiss*
**DENIED**

Colleen K. Norris, Esquire, Cari Chapman, Esquire, Phillip Casale, Esquire, Delaware Department of Justice, Wilmington, Delaware, *Attorneys for the State of Delaware*.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware, and Natalie S. Woloshin, Esquire, Woloshin, Lynch & Natalie, Wilmington, Delaware, *Attorneys for Jason Slaughter*.

**DAVIS, J.**

## I. INTRODUCTION

Before the Court are two separate motions to dismiss the present indictment filed by

Defendant Jason L. Slaughter. In both motions, Mr. Slaughter argues that the State of Delaware

violated the Interstate Agreement on Detainers.[1] This is the Court's decision on both motions.

For the reasons set forth below, the Court will **DENY** the motions to dismiss.

---

[1] "The Interstate Agreement on Detainers (IAD) is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000); *see also* 18 U.S.C. app. § 2. The Delaware General Assembly codified the IAD, referred to under the statute as the Uniform Agreement on Detainers ("UAD"), in 1969. *See* 11 *Del. C.* §§ 2540–2550. The terms "UAD" and "IAD" will be used interchangeably throughout this opinion, but all citations will be to the UAD statute provisions as "UAD section ____."

## II. FACTS AND PROCEDURAL HISTORY

### A. OBTAINING CUSTODY OF MR. SLAUGHTER

On July 16, 2012, the State of Delaware ("Delaware" or the "State") indicted Mr. Slaughter with Murder First Degree in relation to the killing of Christopher Masters. Mr. Masters had been killed in his Delaware residence on December 14, 2007. At the time Delaware indicted Mr. Slaughter, Mr. Slaughter was already incarcerated and awaiting trial for another murder in the State of Georgia. On August 15, 2013, Mr. Slaughter was tried and convicted of that murder. The court in Georgia sentenced Mr. Slaughter to life in prison.

On or about October 4, 2013, the State lodged a detainer with the Georgia Department of Corrections ("GDOC"). On or about October 15, 2013, GDOC acknowledged the detainer. Mr. Slaughter then requested disposition of the charges underlying the State's detainer pursuant to UAD section 2542 on or about October 24, 2013. Mr. Slaughter delivered all paperwork required to formalize his request to the warden of GDOC. On or about October 24, 2013, GDOC then sent Mr. Slaughter's request under the UAD to "The Honorable Joseph R. Biden, III, Attorney General's Office, State of Delaware, Wilmington, Delaware." The GDOC, however, did not send Mr. Slaughter's UAD request to the Court.[2] Accompanying the UAD request was Georgia's offer of temporary custody as well as Form VII, "Prosecutor's Acceptance of Temporary Custody," to be completed by the State and returned to Georgia.

Before the State completed Form VII, however, Delaware advised GDOC that the UAD did not apply to capital murder cases and that Delaware would use a Governor's Warrant to

---

[2] Although it has been represented to the Court that Mr. Slaughter asked for his UAD request to be sent to the Court, the Court has not seen any request that specifically identifies The Superior Court of the State of Delaware as an addressee. For purposes of this Opinion, the Court will assume that such a request exists; however, if one does not then that would be an additional reason to deny the motions to dismiss.

procure custody of Mr. Slaughter. GDOC, through a letter, later informed Delaware that Mr. Slaughter had been told that the UAD did not apply and that Delaware would use a Governor's Warrant to extradite him to stand trial in Delaware. The State therefore never completed any forms associated with procuring custody of Mr. Slaughter pursuant to the UAD.[3]

Instead, the State used a Governor's Warrant to obtain temporary custody of Mr. Slaughter and bring him to Delaware. Governor Jack Markell of Delaware signed the Governor's Warrant on July 23, 2014. Governor Nathan Deal of Georgia signed the Governor's Warrant on July 28, 2014. Mr. Slaughter arrived in Delaware at the James T. Vaughn Correctional Center on October 9, 2014.[4]

On November 18, 2014, the Court held an office conference at which it entered a scheduling order and discussed a date for trial. The Court asked whether the case could be tried within one year of Mr. Slaughter's indictment. Both parties responded that it could not. Counsel for Mr. Slaughter then requested a trial date in March or April of 2016. The Court then, without objection from either party, scheduled trial for April 5, 2016. Due to additional scheduling conflicts, counsel for Mr. Slaughter thereafter requested to continue the trial. The Court has since rescheduled trial for January 24, 2017.

## B.  THE FIRST MOTION TO DISMISS

On March 31, 2015, Mr. Slaughter filed the First Motion to Dismiss (the "First Motion") the indictment. Mr. Slaughter argued that the UAD applied to his case despite the previous representations made by Delaware. Mr. Slaughter claimed that, because the UAD applied, the

---

[3] Initially, the State represented to the Court that Georgia had advised Delaware that Georgia would not extradite Mr. Slaughter under the UAD and that Delaware needed a Governor's Warrant if it wanted custody of Mr. Slaughter. When denying the initial motion to dismiss, the Court relied, in part, on these represented facts. Only recently, the Court learned from the State that the earlier represented facts were incorrect.

[4] In numerous briefings to the Court, Mr. Slaughter's counsel states that Mr. Slaughter arrived in Delaware on November 18, 2014. Counsel cites to the Superior Court Criminal Docket, which lists November 18, 2014 as the date Mr. Slaughter arrived at the Department of Corrections. This is an error. The Department of Corrections has confirmed that Mr. Slaughter arrived at the James T. Vaughn Correction Center on October 9, 2014.

State failed to timely extradite him from Georgia and try him in this criminal action within the 180-day deadline in UAD section 2542. The State opposed the First Motion.

The Court held a hearing on the First Motion on July 30, 2015. At the hearing, the State incorrectly represented that after receiving Mr. Slaughter's UAD request, but before the expiration of 180 days, Georgia had informed Delaware that Georgia would not honor the UAD and needed a Governor's Warrant in order to obtain custody of Mr. Slaughter. The State also acknowledged that the information purportedly provided by Georgia — that the UAD does not apply to capital murder cases — was incorrect. It conceded that the UAD does apply to capital murder cases, but the State nonetheless argued against dismissal. The Court asked the State if it knew why Georgia had provided this incorrect information. The State responded that it did not.

Through a detailed oral bench ruling issued at the conclusion of the hearing, the Court denied the First Motion. The Court denied the First Motion for two reasons: "(a) Georgia had notified the State that the IAD did not apply in a capital murder charge and that the State would need to obtain a Governor's Warrant to bring Mr. Slaughter to Delaware, and that Georgia notified the State of this prior to the expiration of the 180-day deadline under the IAD; and (b) that while the State had received notice from Mr. Slaughter under the IAD, the Court, as it must, never received actual notice of Mr. Slaughter's request under the IAD."[5]

Mr. Slaughter filed a Motion for Reargument on August 5, 2015. Mr. Slaughter again argued that the State failed to timely extradite him pursuant to UAD section 2542 of the UAD. The Court heard arguments from counsel for both Mr. Slaughter and the State. The Court denied the Motion for Reargument on December 22, 2015.

## C. THE SECOND MOTION TO DISMISS

Mr. Slaughter filed his Second Motion to Dismiss (the "Second Motion") on August 24,

---

[5] Tr. of July 30, 2015 Hr'g 53–69.

4

2016. Mr. Slaughter now makes his arguments under UAD section 2543 instead of UAD 2542. In support of the Second Motion, Mr. Slaughter relies on the holding in *United States v. Mauro*[6] to argue that the State failed to bring him to trial within the 120-day time limit enumerated in UAD section 2543. Mr. Slaughter argues that the State triggered UAD section 2543 and the 120-day time limit by lodging a detainer and then making a written request for temporary custody via the Governor's Warrant. Prior to filing the Second Motion, both the State and Mr. Slaughter essentially acknowledged that the parties had: (i) not been aware of the *Mauro* decision; (ii) not determined the impact, if any, the *Mauro* decision had on this case; or, (iii) not known whether a detainer and Governor's Warrant could potentially implicate UAD section 2543.[7] The Court held a hearing on the Second Motion on October 14, 2016.

While the Court had the Second Motion under advisement, the State sent a letter to the Court correcting the misrepresentations made at the July 30, 2015 hearing on the First Motion. The State now disclosed that Ron Mullen, the State's Extradition Supervisor, conveyed to GDOC the concept that the UAD did not apply to Mr. Slaughter's case and that custody of Mr. Slaughter had to be obtained through a Governor's Warrant. The State went on to inform the Court that GDOC only sent the letter memorializing the misinformation after hearing from the State's Extradition Supervisor.

**D. THE RENEWED FIRST MOTION TO DISMISS**

Based on this new information, Mr. Slaughter renewed the First Motion (the "Renewed First Motion"). In the First Motion, Mr. Slaughter had argued under UAD section 2542 of the UAD and the 180-day requirement. In the Renewed First Motion, Mr. Slaughter argues for

---

[6] 436 U.S. 340 (1978).

[7] The State found and presented *Mauro* in a different pending murder case before the President Judge. Mr. Slaughter's counsel is also the defense attorney in that case. Thus, a review of *Mauro* by counsel for Mr. Slaughter prompted the Second Motion.

dismissal under UAD section 2544. Mr. Slaughter now contends that the State, by misrepresenting the applicability of the UAD and refusing Mr. Slaughter's request for disposition of his charges, refused or failed to accept temporary custody of Mr. Slaughter within the meaning of UAD section 2544. Therefore, by operation of statute, Mr. Slaughter contends that the Court must dismiss the present indictment with prejudice.

### III. THE UNIFORM AGREEMENT ON DETAINERS

In 1969, the Delaware General Assembly enacted the UAD.[8] The UAD is designed in part to protect the rights of prisoners who have outstanding detainers lodged against them by another jurisdiction.[9] The UAD notes that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation."[10] Therefore, the UAD seeks to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."[11]

For purposes of the UAD, a detainer is a request by one state — the receiving state — to another state — the sending state — to detain a prisoner or send notice when the prisoner is about to be released.[12] Upon the issuance of a detainer, there are two different ways to initiate disposition of the charges underlying the detainer, one initiated by the receiving state and one initiated by the prisoner.[13]

---

[8] 11 *Del. C.* §§ 2540–2550.
[9] *See id.* § 2540.
[10] *Id.*
[11] *Id.*
[12] *Bruce v. State*, 781 A.2d 544, 548 n.3 (Del. 2001).
[13] *See* 11 *Del. C.* §§ 2542, 2543.

## A.  UAD SECTION 2543

The receiving state may initiate disposition of the charges underlying a detainer under UAD section 2543.[14]  After lodging a detainer, the receiving state must then present to the sending state a "written request for temporary custody."[15]  Unless the governor of the sending state disapproves the request within thirty days after receipt, the sending state will make the prisoner available to the receiving state.[16]  If the prisoner is made available, trial must be commenced within 120 days of the individual's arrival in the receiving state, unless good cause is shown as to why a continuance is necessary.[17]

In *United States v. Mauro*[18], the United States Supreme Court elaborated on the relationship between the detainer and the "written request for temporary custody."[19]  *Mauro* made clear that a detainer and a "written request" are two separate documents.[20]  The function of a detainer is to put the sending state "on notice that the prisoner is wanted in another jurisdiction."[21]  The function of a "written request" is to indicate that "further action must be taken by the receiving state in order to obtain the prisoner."[22]

This distinction between a detainer and a "written request" is important for purposes of the UAD.  Standing alone, a "written request" is not a detainer and does not trigger application of the UAD.[23]  However, when the receiving state lodges both a detainer and requests temporary custody of the prisoner by filing a written request, it triggers UAD section 2543 and the 120-day

---

[14] *Id.* § 2543
[15] *Id.* § 2543(a).
[16] *Id.*
[17] *Id.* § 2543(c).
[18] 436 U.S. 340 (1978).
[19] *Mauro,* 436 U.S. at 358
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 360–61.

deadline.[24]

## B. UAD SECTION 2542

A prisoner may also initiate disposition of charges underlying a detainer pursuant to UAD section 2542.[25] Under this section, a prisoner may independently request final disposition of charges underlying a detainer rather than waiting for the receiving state to file a "written request for temporary custody."[26] The prisoner must deliver to "the prosecuting officer *and* the appropriate court of jurisdiction written notice of the place of imprisonment and the request for final disposition to be made of the indictment, information or complaint."[27] If these requirements are all satisfied, the receiving state must bring the prisoner to trial within 180 days of receiving the request, unless good cause is shown as to why a continuance is necessary.[28]

## C. UAD SECTION 2544

The prisoner may move for dismissal of the charges under UAD section 2544 if the receiving state then fails to perform its obligations under the UAD.[29] The UAD expressly requires that the matter be dismissed with prejudice if the receiving state fails to bring the prisoner to trial within 120 days under UAD section 2543 or 180 days under UAD section 2542, or within the time allowed by a properly granted continuance.[30] Similarly, if the receiving state "shall refuse or fail to accept temporary custody" of the prisoner, the UAD explicitly requires that the matter be dismissed with prejudice.[31]

## IV. DISCUSSION

Mr. Slaughter argues for dismissal of his charges under UAD section 2544 due to two

---

[24] *Id.* at 361–62.
[25] 11 *Del. C.* § 2542.
[26] *Id.* § 2542(a)
[27] *Id.* (emphasis added).
[28] *Id.*
[29] *See id.* § 2544(c).
[30] *Id.*
[31] *Id.*

8

alleged violations of the UAD. First, Mr. Slaughter argues that the Court must dismiss the indictment because the State refused temporary custody of Mr. Slaughter when it rejected his UAD request under UAD section 2542 and, instead, procured custody of Mr. Slaughter through the Governor's Warrant. Second, Mr. Slaughter argues that the Court must dismiss the indictment because the State did not try Mr. Slaughter within 120 days of his arrival in Delaware as mandated by UAD section 2543. In making this second argument, Mr. Slaughter relies on *Mauro* to argue that the State triggered the 120-day window under UAD section 2543 when it issued the detainer and a "written request for temporary custody" via the Governor's Warrant.[32]

A.   **WHETHER THE STATE VIOLATED UAD SECTION 2544 BY REFUSING GEORGIA'S OFFER OF TEMPORARY CUSTODY**

Mr. Slaughter first argues that the State violated UAD section 2544 by refusing temporary custody of Mr. Slaughter. The Court need not reach the issue of whether the State refused temporary custody of Mr. Slaughter. The Court will, instead, reaffirm its ruling on the First Motion and the Motion for Reargument and hold that UAD section 2544 does not apply because Mr. Slaughter's rights under the UAD never vested.

1.   **Mr. Slaughter's rights under the UAD never vested because he did not perfect actual delivery of his UAD request to the Court**

In its decision issued from the bench on July 30, 2015, the Court cited two reasons in denying Mr. Slaughter's First Motion. First, "Georgia had notified the State that the IAD did not apply in a capital murder charge and that the State would need to obtain a Governor's Warrant to bring Mr. Slaughter to Delaware, and that Georgia notified the State of this prior to the expiration of the 180-day deadline under the IAD."[33] Second, "that while the State had received notice from Mr. Slaughter under the IAD, the Court, as it must, never received actual notice of

---

[32] *See Mauro*, 436 U.S. at 344.
[33] Tr. of July 30, 2015 Hr'g 53–69.

9

Mr. Slaughter's request under the IAD."[34]  The Court reaffirmed this ruling on the Motion for Reargument.[35]

The Court concedes that its first basis for dismissing the First Motion is no longer applicable since the State, not Georgia, conveyed the misinformation about the UAD.  However, the Court's second basis for dismissing the First Motion is still applicable and has not been refuted by Mr. Slaughter.

When a prisoner requests final disposition of the charges underlying a detainer, UAD section 2542(a) expressly requires the prisoner to have "caused to be delivered to the prosecuting officer *and* the appropriate court of the prosecuting officer's jurisdiction written notice of the place of imprisonment and the request for final disposition to be made of the indictment."[36]  Only after these requirements are satisfied do a prisoner's rights under the UAD vest.[37]

The United State Supreme Court clarified that the delivery required under the IAD is actual delivery.  In *Fex v. Michigan*[38], the State of Michigan issued a detainer against a prisoner in Indiana.[39]  In response, the prisoner delivered his IAD request to the Indiana prison authorities, who then sent the prisoner's IAD request to the relevant Michigan prosecutor and court.[40]  The prisoner then argued that the State of Michigan violated the IAD, on the ground that his trial would not begin until after the 180-day time limit in the IAD.[41]  The prisoner, however, calculated the start of the 180-day period from when he delivered his IAD request to the prison authorities, not from when the court and prosecutor actually received notice.[42]

---

[34] *Id.*
[35] *See State v. Slaughter*, C.A. No. 1207010738, 2015 WL 9595425, at *1 (Del. Super. Dec. 22, 2015).
[36] 11 *Del. C.* § 2542(a) (emphasis added).
[37] *State v. Farrow*, 2005 WL 1653992, at *1 (Del. Super. June 3, 2005).
[38] 507 U.S. 43 (1993).
[39] *Fex*, 507 U.S. at 46.
[40] *Id.*
[41] *Id.*
[42] *Id.*

10

The United States Supreme Court rejected the prisoner's calculation of the 180-day period.[43] It reasoned that a prisoner cannot "caused something to be delivered" to the court and the prosecutor unless delivery in fact occurs.[44] Based on this plain meaning interpretation, the United States Supreme Court held that the 180-day time period in the IAD does not commence until the prisoner's request has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.[45] It further clarified that only after this delivery has occurred can the prisoner "entertain the possibility of counting the 180 days from the transmittal to the warden."[46]

Delaware courts have followed the reasoning of the United States Supreme Court in requiring actual delivery.[47] In *State v. Davis*[48], the defendant requested disposition of his

---

[43]*Id.* at 47.

[44] *Id.*

[45] *Id.* at 52.

[46] *Id.* at 50.

[47] A host of other jurisdictions have also required actual delivery. *See United States v. Bell,* C.A. No. 97-4730, 1998 WL 911705, at *3 (4th Cir. Dec. 31, 1998) (following *Fex* and rejecting petitioner's argument that he satisfied IAD requirements when he delivered notice to prison warden whom petitioner asserted was statutory agent of court); *United States v. Paredes-Batista,* 140 F.3d 367, 374 (2d Cir. 1998) (following *Fex* and explaining that "[t]he Supreme Court has stated unequivocally that the IAD is to be read literally"); *United States v. Dent,* 149 F.3d 180, 186 (3d Cir. 1998) (stating that "invocation of Article III's 180-day time limit generally requires strict compliance with the Article's requirements"); *United States v. Collins,* 90 F.3d 1420, 1426 (9th Cir. 1996) (stating that "*Fex* instructs us that the IAD means what it says. And when it says that the prisoner must have his demand 'delivered to the . . . appropriate court,' that is what it means."); *Bryant v. Com.,* 199 S.W. 3d 169, 173–74 (Ky. 2006) (explaining that the court cannot demand less than strict compliance with the plain language of the IAD because to do so would "ignore controlling case law on this subject, in particular, the United States Supreme Court's decision in *Fex v. Michigan*"); *McNelton v. State,* 990 P.2d 1263, 1274–75 (Nev. 1999) (recognizing that under *Fex,* prisoner's request for final disposition requires actual delivery to court and prosecuting officer of jurisdiction that lodged detainer against him); *State v. Moe,* 581 N.W.2d 468, 472 (N.D. 1998) (concluding that because the inmate's second request was never forwarded to North Dakota officials by Colorado officials, 180-day period under IAD never commenced); *Fields v. United States,* 698 A.2d 485, 489–90 (D.C. 1997) (rejecting prisoner's substantial compliance argument and recognizing that court is bound by *Fex*); *State v. Greenwood,* 665 N.E.2d 579, 581–82 (Ind. 1996) (requiring strict compliance with IAD procedures and recognizing that procedures are "not mere technicalities"); *Pinto v. Warden,* C.A. No. 972412, 1999 WL 49378, at *7 (Conn. Super. Jan. 20, 1999) (stating that "[w]hile it is true that earlier decisions of courts were split on when the 180 day period begins, the majority of courts . . . have held that the period begins to run once the request is actually received by the appropriate court and prosecutor"); *Commonwealth v. Flores,* C.A. No. 91-493, 1998 WL 792466, at *3 (Mass. Super. Nov. 6 1998) (holding that the "IAD as construed by *Fex* requires that a prisoner must be tried within 180 days of the date when his request for disposition is actually received by the state in which the charges are pending, not when the prisoner provides that request to his custodial authorities").

[48] 1993 WL 138993, at *1 (Del. Super. Apr. 7, 1993).

Delaware charges by delivering the proper forms to the appropriate prison authorities.[49] The prison authorities, however, failed to send the forms to the Delaware Department of Justice and the Delaware Superior Court.[50] The State did not bring the defendant to trial within 180 days and the defendant moved to dismiss the indictment.[51] In denying the motion to dismiss, the Court applied the plain meaning of UAD section 2542 and held that "written notice means actual notice received, in this instance, by the Superior Court *and* the Department of Justice."[52]

The facts of *State v. Farrow*[53] are most similar to the facts of Mr. Slaughter's case. In *Farrow*, the defendant requested disposition of his Delaware charges by delivering the proper forms to the appropriate prison authorities.[54] The prison authorities then forwarded these documents to the Court, but not the Delaware Department of Justice.[55] Therefore, similar to this case, only one of the two required entities received notice of the defendant exercising his rights under the UAD.[56]

The defendant moved to dismiss the indictment based on the State's failure to bring him to trial within 180 days.[57] This Court denied the motion because the prisoner had to give "actual notice to the court and the prosecutor of his request for a trial before his right to a trial within 180 days vests."[58] Just as a prisoner cannot ignore sending the request through prison officials to trigger his trial right, "he cannot also fail to give actual notice to both the prosecuting agency and

---

[49] *Davis*, 1993 WL 138993, at *1–2.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 5 (emphasis added).
[53] 2005 WL 1653992, at *1 (Del. Super. June 3, 2005).
[54] *Farrow*, 2005 WL 1653992, at *1.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at *2; s*ee also State v. Ringgold*, 2003 WL 1903768, *at 3 (Del. Super. Apr. 17, 2003) ("Written notice is not deemed to be delivered in accordance with the Uniform Agreement on Detainers until notice *has actually been received* by the appropriate court and the appropriate prosecuting attorney of the State.").

appropriate court."[59]

Mr. Slaughter argues that the burden of compliance with the UAD's delivery requirements should lie with the correctional officials, not the prisoner. Mr. Slaughter continues to rely on *Pittman v. State*,[60] a case decided twenty years before the decision in *Fex*. The Delaware Supreme Court stated in *Pittman* that the prisoner is not required to police the correction official to ensure that his request is delivered to the prosecuting agency and the court.[61] Instead, the Delaware Supreme Court held that "the burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit."[62]

Mr. Slaughter minimizes the fact that the Delaware Legislature disagreed with and amended the UAD in response to the decision in *Pittman*.[63] If the burden of compliance is placed on the party states, the Delaware Legislature noted that cases could be dismissed because of a receiving state's "technical noncompliance with the law."[64] For example, "if a request is lost in another state's prison system or in the mail, the charges will no doubt be dismissed even though the appropriate prosecuting attorney is never actually aware that the prisoner made such a request."[65] To prevent such a result, the Legislature enacted UAD section 2542(g) — a supplemental provision to the UAD.[66] UAD section 2542(g) explains that "written notice shall not be deemed to have been caused to be delivered to the prosecuting officer and the appropriate

---

[59] *Id.*
[60] 301 A.2d 509 (Del. 1973).
[61] *Pittman*, 301 A.2d at 512–13.
[62] *Id.* at 514.
[63] *See Farrow*, 2005 WL 1653992, at *2 (noting that the House report on the pending legislative change cites *Pittman* as the reason for amending 11 *Del. C.* § 2542 to require actual notice to the prosecutor and the Court before a case can be dismissed).
[64] *Davis*, 1993 WL 138993, at *4 (citing the synopsis to H.B. 108 of the 131st General Assembly).
[65] *Id.*
[66] 11 *Del. C.* § 2542(g) (emphasis added).

court of this State . . . until such notice or notification has *actually been received by the appropriate court and the appropriate prosecuting attorney of this State . . . .*[67] Therefore, the Legislature sought to prevent charges against Delaware defendants from being dismissed due to clerical errors committed by the sending state.[68]

Mr. Slaughter argues that, here, the prosecuting agency *was* actually aware that he had made a request and still failed to bring him to trial within 180 days. Therefore, Mr. Slaughter argues that the concerns expressed by the Delaware Legislature in enacting UAD section 2542(g) are not present in this case. This argument ignores the fact that the Legislature drafted UAD section 2542(g) to entitle the prosecuting agency *and* the Court to receive notice. Had the Legislature intended for only the prosecutor to receive notice based on the policy concerns outlined above, the Legislature easily could have drafted the language of UAD section 2542(g) to exclude the Court from also receiving notice. The Legislature did not do that here.

The Court's analysis is supported by a similar decision from the State of Maryland. The Maryland legislature enacted a version of the IAD that also requires that both the prosecutor and the relevant court receive actual notice of a prisoner's request under the IAD. In *Tidmore v. State,*[69] the Court of Special Appeals of Maryland reviewed a trial court's decision to deny a prisoner's motion to dismiss based on the state's failure to bring him to trial within 180 days.[70] The trial court denied the motion based on the fact that the prisoner had served notice on the prosecuting agency, but not the court.[71] The prisoner argued that he substantially complied with the IAD by providing notice to the prosecuting agency.[72] In determining whether the prisoner

---

[67] *Id.*
[68] *See Farrow*, 2005 WL 1653992, at *2
[69] 2015 WL 5970036, at *1 (Md. Spec. App. Aug. 11, 2015) *cert. denied*, 445 Md. 21, 123 A.3d 1006 (2015).
[70] *Tidmore*, 2015 WL 5970036, at *1.
[71] *Id.*
[72] *Id.*

needed to perfect actual delivery to the court, the *Tidmore* court looked to the language of the

IAD, including a supplemental provision to the IAD enacted by the Maryland Legislature.[73]

Mirroring almost identical language to UAD section 2542(g), Maryland Code section 8-416

states that "written notice may not be deemed to have been delivered to the prosecuting officer

and the appropriate court of the state . . . until such notice or notification is *actually received by*

*the appropriate court and the appropriate State's Attorney of this State* . . . ."[74]

The *Tidmore* court upheld the trial court's decision to deny the motion.[75]  In upholding

the decision, the court noted that the language of Maryland Code section 8-416 was especially

relevant to the issue before the court.[76]  That language clarified that the court and the prosecuting

agency must actually receive notice of the request.[77]  Based on the plain meaning of Maryland

Code section 8-416, the court held that "the failure to effect actual notice [to the court] forecloses

appellant's claim that the trial court erred by denying his motion to dismiss based on a violation

of the Interstate Agreement on Detainers."[78]  The plain language also foreclosed the appellant's

substantial compliance argument.[79]

In addition to it satisfying the plain meaning of UAD section 2542(g), the Court also

notes the utility in requiring the prisoner to cause the delivery of his request to the appropriate

court.  If the prisoner requests a trial within 180 days, the Court has a strong interest in receiving

notice of this request as soon as possible.[80]  The Court must plan and manage its docket to ensure

that a trial within 180 days is possible.  Excusing a prisoner from notifying the Court would only

---

[73] *Id.* at *2.  The IAD is codified in the Maryland Code at *MD CORR. SERV.* §§ 8-402–8411.
[74] *Id.* at *4 (citing *MD CORR. SERV.* § 8-416) (emphasis added).
[75] *Id.* at *4.
[76] *Id.*
[77] *Id.* at *4 (citing *MD CORR. SERV.* § 8-416).
[78] *Id.*
[79] *Id.* at *4–5.
[80] *See United States v. Henderson*, 945 F.2d 430, 434–35 (1st Cir. 1991) ("A vital aim of the requirement of strict compliance is to assure that the appropriate prosecuting authorities promptly are placed on notice when Article III is invoked by an inmate.")

increase the possibility of a trial outside the 180-day window and, in turn, increase violations of the UAD. The Court will not allow such a result.

The Court will therefore follow the majority of courts, including those in *Fex*, *Davis*, *Farrow*, and *Tidmore*, in applying the plain meaning of UAD section 2542.[81] In doing so, the Court reaffirms its initial ruling that Mr. Slaughter never perfected actual delivery of his UAD request. The Court recognizes that Mr. Slaughter delivered his UAD request to the prison officials in Georgia.[82] The Georgia prison officials then sent copies of Mr. Slaughter's request to the Delaware Department of Justice. The Georgia prison officials never sent a copy of Mr. Slaughter's request to the Court. UAD section 2542(a) explicitly entitles the prosecuting agency *and* the court to receive notice.[83] UAD section 2542(g) then clarifies that this notice is not perfected until the prosecuting agency and the court actually receive the notice.[84] The Court never received actual notice, and, as a result, Mr. Slaughter never perfected his request under the UAD.

Mr. Slaughter argues that the Court would have received actual notice of Mr. Slaughter's UAD request had the State completed Form VII, "Prosecutor's Acceptance of Temporary Custody." Georgia sent Form VII to the State along with Mr. Slaughter's UAD request. Form

---

[81] *See supra* note 47 for a list of cases upholding the plain meaning of the IAD in requiring actual delivery to the prosecutor and the court.

[82] The Court is unsure whether Mr. Slaughter fully or "properly" filled out his UAD request. The Court is in possession of only one copy of that request. The request does not have the Court or its address filled out anywhere on the form. In fact, the space for designating the Court and its address is conspicuously blank. Moreover, no one has provided any evidence that Mr. Slaughter took steps to cause notice to be served on the Court by certified or registered mail, return receipt requested. This is true even though the form provides:

> Signed copies must be sent to the <u>Interstate Detainer Coordinator of Georgia and to the Agreement Administrator of the receiving state, the prosecuting official of the jurisdiction</u> which placed the detainer, **and the clerk of the court which has jurisdiction over the matter**. The copies for the prosecuting officials **and the court** must be transmitted by certified or registered mail, return receipt requested.

Second Mot. to Dismiss, Ex. B (emphasis added). As discussed *supra* note 2, the answer to that question is not necessary to this Opinion.

[83] 11 *Del. C.* § 2542(a).

[84] *Id.* § 2542(g).

VII requires a judge's authorization. By not completing Form VII and seeking a judge's authorization, Mr. Slaughter argues that the State deprived the Court of notice.

There is nothing in the language of UAD section 2542, however, that shifts the burden of notifying the Court from the prisoner to the State.[85] In fact, this Court has made it clear post-*Pittman* that once a detainer is lodged, "it is the responsibility and obligation of the defendant to complete the necessary notice demands to activate the provisions of the UAD."[86] Mr. Slaughter did not satisfy his obligations in delivering notice to the Court. The mere fact that that Court *would have* received notice does not excuse the fact that the Court *did not actually* receive notice in this case.

Once again, because the Court did not receive actual notice, Mr. Slaughter did not make a proper request under UAD section 2542. Mr. Slaughter argues that the Court must dismiss the indictment because the State failed to accept temporary custody of Mr. Slaughter. However, before the State could accept or refuse temporary custody of Mr. Slaughter under the UAD, he needed to first make a proper request under the UAD. UAD section 2544 and its right of dismissal does not apply if there was never a proper request under UAD section 2542 to begin the UAD process.[87]

UAD section 2544(a) confirms this fact. It states that, "in response to a request made under § 2542 or § 2543 of this title, the appropriate authority in the sending state shall offer to delivery temporary custody of such prisoner to the appropriate authority" in the receiving state.[88]

---

[85] *See* § 2542(a)-(g).

[86] *Ringgold*, 2003 WL 1903768, at * 3 ("Once the detainer is lodged it is the responsibility and obligation of the *defendant* to complete the necessary notice demands to activate the provisions of the Uniform Agreement on Detainers.") (emphasis added).

[87] *See Casper v. Ryan,* 822 F.2d 1283, 1292 (3d Cir.1987) ("[C]ourts have generally required that prisoners must strictly comply with IAD procedures before they will dismiss charges on the basis of a violation of [the 180 day provision of] Article III."); *Farrow*, 2005 WL 1653992, at * 2 (explaining that the State bears the risk of dismissal only in cases of actual notice).

[88] 11 *Del. C.* § 2544(a).

17

Only after the request is made can the sending state then offer to deliver temporary custody.[89] If these requirements are met and the receiving state then "refuse[s] or fail[s] to accept temporary custody," the prisoner has the right under the UAD to move for dismissal.[90]

Mr. Slaughter failed to perfect the necessary first step in this process. His argument thus presupposes that he properly requested final disposition of his charges, which, as the Court explained, he did not. Mr. Slaughter is not entitled to the protections and remedies of the UAD, including dismissal, unless and until his rights under the UAD vest. Mr. Slaughter's rights did not vest under UAD section 2542 because he did not cause to be delivered to the Court actual notice of his request under UAD section 2542. Therefore, the Court has no reason or basis to dismiss the indictment under UAD section 2544 because, in this instance, the UAD – including UAD section 2544 – does not apply.

## B. WHETHER THE STATE VIOLATED SECTION 2543 OF THE UAD BY FAILING TO BRING MR. SLAUGHTER TO TRIAL WITHIN 120 DAYS OF HIS ARRIVAL IN DELAWARE

In the alternative, Mr. Slaughter moves for dismissal of the indictment under UAD section 2543. UAD section 2543 offers an alternative basis for Mr. Slaughter to seek dismissal because disposition of the charges under UAD section 2543 is initiated by the State, not the prisoner.[91] Because Mr. Slaughter did not initiate the request for final disposition of the charges, Mr. Slaughter has no notice obligations under UAD section 2543.[92] So, if the UAD applies at all, Mr. Slaughter's second argument is not necessarily precluded by the Court's ruling on his first argument.

Mr. Slaughter argues that the State violated UAD section 2543 because it failed to bring him to trial within 120 days of his arrival in Delaware. Mr. Slaughter relies on *Mauro* to argue

---

[89] *Id.*
[90] *Id.* § 2544(c).
[91] *See id.* § 2543(a).
[92] *See id.*

18

that the State triggered the 120-day window in UAD section 2543 when it issued the detainer and a "written request for temporary custody" via the Governor's Warrant. The State contests the applicability of *Mauro* and the 120-day provision on the basis that the Governor's Warrant does not qualify as a "written request for temporary custody." The Court need not resolve the question of whether *Mauro* and the 120-day time limit in UAD section 2543 applies to Mr. Slaughter's case.[93] Mr. Slaughter, through counsel, waived the right to a trial within 120 days by requesting a trial date outside the 120-day window. Therefore, even if the State triggered UAD section 2543, Mr. Slaughter waived the speedy trial protections under UAD section 2543, and may not now invoke those protections to request dismissal of his case.

1. **The State did not violate section 2543 of the UAD by failing to bring Mr. Slaughter to trial within the statutory timeframe because Mr. Slaughter waived the right to a trial within 120 days**

In *New York v. Hill*,[94] the United States Supreme Court addressed the issue of waiver of IAD rights. In *Hill*, the State of New York lodged a detainer against a prisoner, and the prisoner then filed a request for final disposition of his charges under the IAD.[95] After the State of New York procured custody of the prisoner, the court scheduled a conference to set a date for trial.[96] At the conference, the prosecutor suggested a May 1 trial date.[97] Defense counsel agreed to the trial date.[98] The May 1 trial date fell outside the 180-day deadline for bringing the defendant to trial.[99] The defendant thereafter filed a motion to dismiss based on the state's failure to bring

---

[93] At the October 14, 2016 hearing on the Second Motion, the Court heard argument from both parties as to whether a governor's warrant qualifies as a "written request for temporary custody" for purposes of triggering UAD section 2543 and applying *Mauro*. The Court need not address this issue in its decision as the Court is relying on an alternative basis for denying Mr. Slaughter's motion to dismiss.
[94] 528 U.S. 110 (2000).
[95] *Hill*, 528 U.S. at 112.
[96] *Id.*
[97] *Id.* at 113.
[98] *Id.*
[99] *Id.*

him to trial within 180 days.[100]

The United States Supreme Court held that defense counsel's agreement to a trial date outside the IAD period barred the defendant from seeking dismissal on the ground that trial did not occur within that period.[101] The court reasoned that the defendant forfeited his claim to a trial within 180 days by "willingly accepting treatment inconsistent with the IAD's time limits."[102] To reach a contrary result would "enable defendants to escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recanting later on."[103]

While the defendant himself did not agree to the trial date, the *Hill* court made clear that defense counsel can waive certain non-fundamental rights on behalf of his client.[104] One of these non-fundamental rights is trial scheduling.[105] Therefore, when this type of waiver occurs, the defendant is deemed bound by the acts of his lawyer.[106]

The Delaware Supreme Court in *Bruce v. State*[107] expanded on the decision in *Hill*. The *Bruce* court explained that the holding in *Hill* contemplated waiver only when the defendant requests or agrees to a government request for a continuance that is inconsistent with the IAD's time limits.[108] However, the *Bruce* court held that where a defendant requests a continuance

---

[100] *Id.*
[101] *Id.* at 110.
[102] *Id.* at 118.
[103] *Id.*
[104] *Id.* at 115 (citing *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988) ("Although there are basic rights that the attorney cannot waive without the fully informed consent of the client, the lawyer has – and must have – full authority to manage the conduct of the trial.")).
[105] *Hill,* 528 U.S. at 115.
[106] *Id.* (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962)).
[107] 781 A.2d 544 (2001).
[108] *Bruce*, 781 A.2d at 549; *see also Brown v. Wolff,* 706 F.2d 902, 907 (9th Cir. 1983) (finding a waiver if the prisoner "affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD" and explaining that mere silence is ordinarily insufficient to waive a defendant's IAD rights); *Ward v. Com.,* C.A. No. 2000-CA-000186, 2001 WL 282708, at *5 (Ky. Ct. App. Mar. 23, 2001) (applying its interpretation of *Hill* "that a defendant implicitly waives the IAD's time limits where he or his counsel agrees to a trial date outside those limits"); *People v. Jones,* 495 N.W.2d 159, 160 (Mich. Ct. App. 1992) (finding a waiver if the prisoner "either expressly or impliedly, agrees or requests to be treated in a manner contrary to the terms of the IAD"); *Drescher v. Super. Ct.,* 218 Cal.App.3d 1140, 1148 (Cal. Ct. App. 1990) (finding a waiver if there is a "showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period").

*within* the IAD's time limits, the 180-day limit is tolled rather than waived completely.[109]

Pursuant to the holding in *Hill*, the Court finds that Mr. Slaughter is barred from seeking dismissal on the ground that his trial did not occur within 120 days. The Court held an office conference on November 18, 2014. At that conference, the Court asked counsel for both parties whether the case could be tried within one year of indictment as mandated by the Delaware Supreme Court. Both parties responded that it could not. Counsel for Mr. Slaughter then requested a trial date in March or April of 2016, well beyond the 120-day window. Counsel for Mr. Slaughter explained that:

> The reason I say that is, after we finish with the Paladin Club case, the defendants are Rivers and Benson, for the record. My understanding is this is a pretty voluminous record based case because there's already been a capital murder prosecution. And our mitigation people and experts are going to have a lot to go through, as will we. So, I want to give us a little wiggle room in early 2016 to focus, preparing solely for this. So, that's why I'm asking for March or April.[110]

Based on this request, the Court scheduled trial for April 5, 2016. Since the office conference, counsel for Mr. Slaughter requested that the Court continue the trial due to additional scheduling conflicts. In his request to continue trial, counsel for Mr. Slaughter represented that his client would not be prejudiced by the later trial date.[111] Trial is now scheduled for January 24, 2017.

The conduct of Mr. Slaughter falls squarely within the conduct deemed by the *Hill* and *Bruce* courts to constitute a waiver. Mr. Slaughter requested a trial date outside the 120-day window in UAD section 2543. After the initial request, Mr. Slaughter again requested that the Court continue the trial. By requesting a trial date outside the 120-day window not once, but twice, Mr. Slaughter has repeatedly accepted treatment inconsistent with the UAD's timelines. He may not now seek dismissal based on the State's failure to timely bring him to trial.

---

[109] *Bruce*, 781 A.2d at 550.
[110] Tr. of Nov. 18, 2014 Office Conference at 4–5.
[111] *See* Aug. 7, 2015 Letter from the Court to Chief Justice Strine.

Mr. Slaughter argues that he only requested a trial date outside the 120-day window because the State represented at the office conference that this was a Governor's Warrant case – i.e., that Mr. Slaughter had been brought to Delaware on the Governor's Warrant and not by way of the UAD.  Mr. Slaughter's counsel also represented that the State did not mention that a detainer had been issued — the necessary first step in any case implicating the UAD.  Therefore, Mr. Slaughter argues that he had no reason to request a trial within 120 days because he did not know that the UAD was implicated in his case.

The Court is not persuaded by Mr. Slaughter's argument.  A waiver of rights under the UAD need only be voluntary.[112]  It need not be knowingly or intelligently made.[113]  The reason for this distinction is that the UAD is a statutory, not constitutional, mechanism:

> While a waiver of statutory speedy trial rights need not comport with the standards applicable to a waiver of basic constitutional rights — that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant — a waiver of statutory rights must still be voluntary. Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period.[114]

It is clear that Mr. Slaughter voluntarily waived his speedy trial rights because he requested a trial date outside the 120-day window.  Therefore, Mr. Slaughter is barred from seeking dismissal of his charges on the basis that his trial did not occur within 120 days after his in arrival in Delaware.

---

[112] *See Yellen v. Cooper,* 828 F.2d 1471, 1474 (10th Cir. 1987); *Jones*, 495 N.W.2d at 161; *Drescher*, 218 Cal.App.3d at 1148.

[113] *See Yellen*, 828 F.2d at 1474; *Jones*, 495 N.W.2d at 161; *Drescher*, 218 Cal.App.3d at 1148.

[114] *Drescher*, 218 Cal.App.3d at 1148; *see also Yellen,* 828 F.2d at 1474 ("The concerns behind the enactment of the IAD are not of the truth-seeking kind that would normally prompt application of the constitutional standard of waiver, and therefore, the 'knowing and intelligent' standard is not the appropriate test for determining whether or not there has been a waiver of IAD rights."); *Jones*, 495 N.W.2d at 161 ("Because the rights afforded to defendants pursuant to the IAD are statutory and not constitutional, federal courts have required that a waiver of rights under the IAD need only meet the test of voluntariness, and need not be knowingly and intelligently made.").

## 2. Any failure by the State to bring Mr. Slaughter to trial within 120 days constitutes harmless error

Even if Mr. Slaughter did not waive the protections of UAD section 2543, the Court finds that the State's failure to bring Mr. Slaughter to trial within 120 days constitutes harmless error. It is unlikely that Mr. Slaughter's trial could have been scheduled within the 120-day window even if Mr. Slaughter had requested it. As of the office conference on November 18, 2014, forty days of the 120-day time period had already elapsed. This meant that, in order to comply with the UAD's timelines, Mr. Slaughter's trial had to begin by March 18, 2015.

Based on the representations made by the parties at the office conference, a trial by March 18, 2015 was highly improbable. The State and Mr. Slaughter's counsel noted that this murder trial would require time and extensive preparation.[115] Mr. Slaughter's counsel also informed the Court that he was handling another complex murder trial.[116] Rather than rush to trial, it is likely that counsel for the State or Mr. Slaughter would have instead requested a continuance for "good cause shown" under UAD section 2543. Alternatively, the Court could have determined on its own that starting the trial by March 18, 2015 could visit prejudice on Mr. Slaughter. Due to the complexity of the case and counsel's scheduling conflicts, the Court would have been well within its discretion in granting a continuance, thereby tolling the 120-day window.[117]

Had the scheduling proceeded as the Court outlines above, Mr. Slaughter would still not have any valid argument in favor of dismissal. Any claim for dismissal under the UAD would fail because requesting a continuance in order to prepare for trial is a reasonable continuance

---

[115] Tr. of Nov. 18, 2014 Office Conference at 4–5.

[116] *Id.*

[117] *See State v. Onapolis*, 541 S.E.2d 611, 615 (W.Va. 2001) (finding that defense counsel's request to continue the trial to review discovery and prepare for trial constituted a necessary and reasonable continuance for good cause shown that tolled the IAD's speedy trial clock); *Scherrer v. Martinez*, 479 S.W. 3d 755, 757 (Mo. Ct. App. 2016) (finding it to be "good cause shown in open court," and upholding the trial court's decision to grant a continuance, where defense counsel requested more time to prepare the case due to its complexity).

within the meaning of the UAD.[118]  Additionally, any claim for dismissal based on an ineffective

assistance of counsel claim would fail because it is well within the right of a trial attorney to

request a continuance to prepare for trial.[119]  Therefore, the Court can envision no scenario in

which Mr. Slaughter would have a cognizable basis to assert a violation of his speedy trial rights

under the UAD.

Moreover, the Court does not find that Mr. Slaughter's rights have been meaningfully

affected by the State's failure to bring him to trial within 120 days.  The UAD's aim is to protect

prisoners' rights by ensuring the expeditious disposition of the charges underlying a detainer.[120]

This is important because a detainer affects the rights of prisoners in various ways, including a

prisoner's right to participate in training and rehabilitation programs.[121]  The Court also

recognizes a situation where a prisoner, who finished serving his sentence in one jurisdiction,

may be held beyond that sentence pending the disposition of the charges underlying a detainer in

another jurisdiction.  In this situation, states must be expeditious in their handling of detainers so

that the prisoner is not forced to sit in prison when he is otherwise eligible for release.

The Court notes that these policy concerns are entirely absent in Mr. Slaughter's case.  In

fact, at the October 14, 2016 hearing on the Second Motion, Mr. Slaughter admitted that the

UAD's policy concerns are not implicated in his case.[122]  Mr. Slaughter has not been deprived of

the benefit of participating in rehabilitation or training programs.  In addition, Mr. Slaughter is

not being detained beyond his sentence while he awaits disposition of the present charges.  Mr.

---

[118] *Bruce*, 781 A.2d at 550 (explaining that the public defender's request for time to prepare a defense constitutes a continuance for good cause shown rather than a waiver of the UAD's time limit).

[119] *State v. Walker*, 201 S.W.3d 841, 850 (Tx. Ct. App. 2006) ("It is possible, as Walker suggests, that counsel was ineffective for failing to request a dismissal. However, it is equally possible that counsel agreed to continue Walker's trial setting beyond the 180-day deadline because counsel was continuing to investigate the case, identify witnesses, and/or develop a defensive strategy for trial.").

[120] 11. *Del. C.* § 2540.

[121] *Mauro*, 436 U.S. at 359.

[122] Tr. of Oct. 14, 2016 Hr'g. 26–27.

Slaughter is a convicted murderer. He is serving a life sentence in Georgia and is not eligible for release should he be acquitted of the charges in Delaware. While the State has been less than competent in its attempts to obtain custody of Mr. Slaughter, he did not sit in prison awaiting extradition to Delaware while the State did nothing. The State made every effort to act upon its detainer. Thus, any error in failing to try Mr. Slaughter in 120 days has not resulted in any meaningful deprivation of his rights.

## V. CONCLUSION

The Court recognizes that this case has not been handled perfectly by the parties. Mr. Slaughter erred in failing to perfect his request under UAD section 2542 by causing notice of his request to be delivered to the Court. The State erred in rejecting Mr. Slaughter's request by operating under the misconception that the UAD did not apply to capital crime charges. However, this does not mean that Mr. Slaughter has been denied any fundamental rights. The Court has diligently worked to resolve the issues in Mr. Slaughter's case. The Court has entertained three separate motions to dismiss and heard argument on each of these motions. The Court has carefully considered all arguments and timely issued its oral and written decisions. Moreover, the parties have been able to otherwise proceed through the pre-trial process with full access to the Court. Accordingly, for all the foregoing reasons, the Court will **DENY** the motions to dismiss.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

25