# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                        |   |                    |
|------------------------|---|--------------------|
| STATE OF DELAWARE,     | ) |                    |
|                        | ) |                    |
| v.                     | ) | ID No. 1108002195  |
|                        | ) |                    |
| EARL HARRIS,           | ) |                    |
|                        | ) |                    |
| Defendant.             | ) |                    |

## OPINION

Date Submitted: January 20, 2017
Date Decided: April 26, 2017

*Upon Defendant Earl Harris's Motion to Dismiss*: **DENIED**

Sean P. Lugg, Esquire (argued), and James J. Kriner, Esquire, Deputy Attorneys General, Delaware Department of Justice, 820 North French Street, 7th Floor, Wilmington, DE. Attorneys for the State.

Patrick Collins, Esquire (argued), Collins & Associates, 716 North Tatnall Street, Suite 300, Wilmington, DE, and Benjamin Gifford, Esquire, The Law Office of Benjamin S. Gifford, IV, 14 Ashley Place, Wilmington, DE. Attorneys for Defendant Earl Harris.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court is Defendant Earl Harris's ("Harris") Motion to Dismiss.[1]

Harris argues that the State's failure to bring him to trial within 120 days of his transfer from New Jersey custody into Delaware custody violates his rights under the Uniform Agreement on Detainers ("UAD" or "IAD").[2] For the reasons that follow, Defendant's Motion to Dismiss is **DENIED.**

# II. BACKGROUND

## A. Indictment and Harris's Incarceration in New Jersey

On April 3, 2006, Harris and his co-defendant William Brown ("Brown")[3] were charged with Burglary Second Degree, Felony Theft, and Conspiracy Second Degree for events occurring on November 22, 2005.[4] On May 9, 2006, the State took Harris into custody.[5] Two days later, Harris posted secured bail and was released.[6] On March 1, 2007, the State entered *nolle prosequis* on the above charges.[7]

---

[1] D.I. 108, 114, 144, 150.

[2] "The Interstate Agreement on Detainers (IAD) is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000); *see also* 18 U.S.C. app. § 2. Delaware codified the IAD at 11 *Del. C.* §§ 2540–2550, referring to the statute as the "Uniform Agreement on Detainers." Consequently, the terms "UAD" and "IAD" will be used interchangeably throughout this opinion, consistent with the terminology of various courts cited in this opinion.

[3] *State v. William Brown*, ID No. 1108002188.

[4] D.I. 78 at 3–4.

[5] *Id.*

[6] *Id.*

[7] *Id.*; D.I. 65 at 2.

2

On July 2, 2012, the State indicted Harris and Brown again, this time on capital murder charges.[8] At the time of indictment, Harris was incarcerated in New Jersey for convictions relating to an attempted shooting of two uniformed police officers in Woodbury, New Jersey.[9] On April 5, 2013, the State lodged a detainer against Harris with the State of New Jersey Department of Corrections.[10]

On July 15, 2013, the State sent a letter to the then-assigned judge stating "[t]he State is desirous of bringing this matter to trial in a timely fashion."[11] The State anticipated that scheduling the case would be difficult given the complexity of the case itself and the complexities of trying capital cases.[12] In the July 15, 2013 letter, the State asserted that, pursuant to 11 *Del. C.* § 2543(c), "[i]f the State were to return the Defendants to Delaware on its own initiative the Court would be obligated to bring the matter to trial within 120 days."[13] At that time, neither Harris nor Brown was represented by counsel. Consequently, the State copied the

---

[8] Harris was indicted on Murder First Degree (three counts), Conspiracy First Degree, Burglary First Degree, Aggravated Act of Intimidation, Conspiracy Second Degree (four counts), Arson Second Degree, Arson Third Degree, and Theft of a Motor Vehicle. D.I. 1. The State informed the Court it would no longer seek the death penalty on August 15, 2016. D.I. 106.

[9] D.I. 65 at 2.

[10] In a May 23, 2016 letter, the State asserted that it lodged a detainer against Harris on April 3, 2013. D.I. 71. The Court cited the State's representation that the detainer was lodged on April 3, 2013, in its June 2, 2016 Opinion. D.I. 78 at 10. (The June 2, 2016 Opinion was modified on June 9, 2016.) The detainer paperwork now included in the record indicates that the detainer was lodged on April 5, 2013. D.I. 144, Appendix at A68–70; D.I. 145, Appendix at SA66. This two-day discrepancy makes no difference to the issues in this case.

[11] D.I. 11. On February 4, 2015, Harris and Brown's cases were reassigned to the current judge. D.I. 16.

[12] D.I. 11.

[13] *Id.*

3

Public Defender's Office ("PDO") on the letter and requested a scheduling conference with the Court.[14]

On July 26, 2013, the Court followed up on the State's July 15, 2013 letter by forwarding the letter to the PDO and the Office of Conflicts Counsel.[15] The Court noted that scheduling could not proceed because Harris and Brown did not have counsel.[16] The PDO responded that it would assign counsel only after performing a representation intake and conflict evaluation, tasks that could not be performed given that Harris and Brown were incarcerated in other jurisdictions and the State had not provided a witness list.[17]

On August 21, 2013, the Court requested that the State provide an update on the status of the case, and the State renewed its previous request for an office conference.[18] The lead prosecutor suggested that it would be prudent "to address the timing of the Defendants' return to Delaware pursuant to the [UAD]" because the State would "exercise significant control over the initial scheduling of the matter by virtue of the timing requirements of the [UAD]" if Harris and Brown were returned without a scheduling order in place.[19]

In response, the PDO maintained that it could not represent Harris or Brown

---

[14] *Id.*
[15] D.I. 69.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

4

at the proposed office conference.[20] Based on the PDO's inability to perform a representation intake or conflict evaluation, the PDO concluded, "[f]or the PDO to attend an office conference and represent the interests of individuals who have not sought our services would be an ethical breach."[21] The record does not reflect that the State took further action to schedule an office conference or secure counsel for Harris or Brown in response to this correspondence.

## B. The State's Decision to Return Harris to Delaware

In 2014, the lead prosecutor began the process of extradition by consulting with the Delaware Department of Justice ("DDOJ") Extradition Unit.[22] The supervisor of the DDOJ Extradition Unit informed the prosecutor that the UAD "was not used to return capital defendants to Delaware for trial and that consequently the 120-day time limit set forth in the [UAD] did not apply in such cases."[23] The DDOJ Extradition Unit directed the prosecutor to the manual of the National Association of Extradition Officials, and after reviewing the manual, the prosecutor came to believe that returning a defendant to Delaware on a Governor's Warrant would not trigger the UAD's 120-day time limit.[24]

On November 14, 2014, the State returned Harris to Delaware using a

---

[20] *Id.*
[21] *Id.*
[22] D.I. 132.
[23] *Id.*
[24] *Id.*

5

Governor's Warrant,[25] and on December 5, 2014, the Office of Conflicts Counsel assigned counsel to represent Harris.[26]

## C.  The March 2, 2015 Office Conference

On January 26, 2015, defense counsel wrote to the Court noting that a trial date had not been set and requesting that the Court hold an office conference to address scheduling.[27]  On March 2, 2015, the Court held an office conference.  Just prior to the office conference, defense counsel, aware of the potential applicability of the UAD, asked the State how it returned Harris to Delaware.[28]  The State told defense counsel that Harris was returned using a Governor's Warrant.[29]

During the March 2, 2015 office conference, on the subject of the delay between the date of the alleged crimes and the instant indictment, the State explained that it brought capital murder charges against Harris and Brown after receiving the results of a years-long FBI investigation.[30]  On the subject of the State's decision to return Harris and Brown to Delaware, the lead prosecutor offered the following:

---

[25] D.I. 113 ¶ 4; D.I. 144, Appendix at A114–39; D.I. 145, Appendix at SA119–24, SA129.
[26] D.I. 15.
[27] Id.
[28] D.I. 127, September 20, 2016 Oral Argument Transcript at 66:10–67:4.
[29] During oral argument on the instant Motion to Dismiss, counsel for Harris asserted that he talked to the State just prior to the March 2, 2015 office conference and that the State informed him that Harris was returned on a Governor's Warrant. Id. at 66:10–67:4, 69:1–18.  Defense counsel invited the State to dispute his recounting if the State had a different recollection. Id. The State did not dispute defense counsel's recollection.
[30] D.I. 22, March 2, 2015 Office Conference Transcript at 5:7–6:6.

A *mea culpa* for not knowing how the law works a little bit better. I thought to bring them back for trial—this would be an interstate detainer case and I thought it would be not the Delaware way to bring defendants back in a capital case without consulting with the Court and counsel about scheduling because you are supposed to try them within 120 days. So . . . I wrote a couple of letters . . . suggesting that we have a scheduling conference, that we figure out who the lawyers are going to be, and we'll bring the defendants back at the convenience of everybody. The public defendants objected to that because they said: We don't represent this guy and until we meet him, how can we do that?

So nothing ever happened with those scheduling conferences. And I hope Court and counsel here won't consider us to be proceeding in an unchivalrous way, but we finally said: All right, we are just going to bring them back.[31]

Further, the lead prosecutor offered some commentary on the UAD's applicability

to the case:

And it turns out that we don't bring them back under the interstate agreement anyway, so there would not have been a time limit. I didn't know that. Apparently, by general acclimation the interstate agreement on detainers does not apply in capital cases. It doesn't say that in the statute. I've been doing this for 30 years and I never knew that. But that's how it works. They come back on governor warrants. There never would have been a time limit.[32]

Thus, at the March 2, 2015 office conference, the State represented: (1) the

State returned Harris and Brown to Delaware on Governor's Warrants; (2) the

State does not use the UAD to return capital defendants; (3) the UAD does not

apply when the State uses a Governor's Warrant; and (4) the UAD does not apply

---

[31] *Id.* at 6:7–7:3.
[32] *Id.* at 7:4–14.

in capital cases. (The accuracy of the State's legal assertions is addressed more fully later in this opinion.)[33] The State's factual assertion that it used Governor's Warrants to return both Harris and Brown is only partially correct. The State returned Harris on a Governor's Warrant but returned Brown on a writ of habeas corpus *ad prosequendum*.[34]

Following the State's summation of the procedural history of the case, the discussion between the Court and the parties turned to the subject of scheduling. To begin, defense counsel requested that the Court schedule a proof positive hearing.[35] After scheduling the proof positive hearing for May 28, 2015, the Court inquired if there was any other business that could be accomplished.[36] Defense counsel responded, "I presume trial-wise we're looking at 2016 probably?"[37] Defense counsel then went on to explain:

> Just to make a record calendar-wise, September 2015 is the Paladin Club capital case. I don't see that going away, unless it gets bumped for some reason into 2016. And then in April of 2016 I have the Jason Slaughter case [another capital case] . . . . So I don't imagine that's going away.
>
> So from my perspective, whether we do two juries or not, I don't see this case getting to trial before the second half of 2016, unfortunately.[38]

---

[33] *See infra* pp. 13, 15–18.
[34] D.I. 144, Appendix at A114–37; D.I. 145, Appendix at SA111, SA119–24.
[35] *Id.* at 19:15–19.
[36] *Id.* at 24:14–19.
[37] *Id.* at 24:20–21.
[38] *Id.* at 25:14–26:3.

8

With the input and consent of the parties, the Court scheduled trial for eight weeks, beginning October 4, 2016, with jury selection beginning September 6, 2016.[39]

## D. Harris's First and Second Motions to Dismiss

On March 2, 2016, Harris moved to dismiss all counts of the indictment except for intentional murder, based on the expiration of the statute of limitations.[40] The Court granted Harris's Motion to Dismiss Counts II–XIII, with the acquiescence of the State, except for two counts of felony murder (Counts III and IV) and the unchallenged count of intentional murder.[41]

On March 18, 2016, Harris filed a Motion to Dismiss Counts III and IV of the Indictment on Speedy Trial and Due Process grounds.[42] In its Response to Harris's Motion to Dismiss Counts III and IV of the Indictment, the State argued, among other things, that Harris could have requested that the State return him to Delaware to stand trial pursuant to the UAD.[43] "If and when a defendant asserts his rights are factors of considerable significance in determining whether there has been a speedy trial violation."[44] And, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."[45] Therefore,

---

[39] *Id.* at 27:5–29:16.
[40] D.I. 45.
[41] D.I. 61.
[42] D.I. 63.
[43] D.I. 65.
[44] *Middlebrook v. State*, 802 A.2d 268, 275 (Del. 2002) (quoting *Bailey v. State*, 521 A.2d 1069, 1082 (Del. 1987)).
[45] *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).

the State argued, the fact Harris could have taken affirmative steps to assert his Speedy Trial rights, but did not, weighed against his Speedy Trial claim.[46]

On June 2, 2016, the Court denied Harris's Motion to Dismiss Counts III and IV of the Indictment.[47]

### E. *Rauf v. State*

On August 2, 2016, the Delaware Supreme Court decided *Rauf v. State*,[48] holding certain aspects of Delaware's capital sentencing statute unconstitutional in light of the United States Supreme Court's decision in *Hurst v. Florida*.[49] On August 15, 2016, at an office conference, the State affirmed that it would no longer pursue the death penalty in this case.[50]

As a non-capital case, the parties agreed that an eight-week trial was no longer necessary, and jury selection was rescheduled from September to the beginning of October, with trial to immediately follow.[51] Trial would now only take five weeks.[52]

---

[46] D.I. 65 at 7–8.

[47] *State v. Brown*, 2016 WL 3356938 (Del. Super. June 2, 2016), *reargument denied sub nom. State v. Harris*, 2016 WL 4151609 (Del. Super. Aug. 3, 2016). The Court modified its June 2, 2016 Opinion on June 9, 2016, to correct a clerical error and to include additional details from an October 31, 2014 office conference. The transcript of that office conference was not available until after the Court had issued its June 2, 2016 Opinion. *Id.* at *7 nn.1, 31 & 35. The modified Opinion did not change the Court's ruling.

[48] 145 A.3d 430 (Del. 2016).

[49] 136 S. Ct. 616 (2016).

[50] D.I. 106.

[51] *Id.*

[52] *Id.*; D.I. 109.

10

**F.** *United States v. Mauro* **and the Instant Motion to Dismiss**

On August 4, 2016, the State, on its own initiative and in commendable adherence to its duty of candor,[53] advised the Court and defense counsel by letter that it had erroneously represented that the UAD time limits did not apply in this case.[54] Citing *United States v. Mauro*,[55] the State acknowledged "[w]hile neither defendant asserted claims [in the Motion to Dismiss Counts III and IV of the Indictment] concerning timeliness of their prosecution pursuant to the Uniform Agreement on Detainers . . . these provisions may apply here."[56]

In response to this disclosure, Harris filed the instant Motion to Dismiss.[57] The State responded, and the Court held oral argument. At oral argument, defense counsel affirmed that he relied on the State's representation that it returned Harris to Delaware using a Governor's Warrant.[58] The State affirmed that it has no evidence that either Harris or Brown was "gaming the system" or "lying in wait"

---

[53] Prof. Cond. R. 3.3(a). ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . .").

[54] D.I. 99.

[55] 436 U.S. 340 (1978).

[56] D.I. 99. Defense counsel and the Court were unaware of *Mauro* and its potential applicability to this case until the State sent its August 4, 2016 Letter.

[57] D.I. 108.

[58] D.I. 127, September 20, 2016 Oral Argument Transcript at 62:17–63:20. Defense counsel did not affirm that he relied on the State's representation that the UAD does not apply in capital cases. *Id.* at 62:17–64:9.

11

for the 120-day time limit to expire.[59]

Following oral argument, it became clear that the expedited briefing and argument schedule the parties had pursued in an effort to maintain the October 2016 trial date had not produced a sufficient record for the Court to issue a decision.[60] The Court specifically highlighted the State's inconsistent representations regarding the applicable law and the means by which the State returned Harris and Brown to Delaware.[61]

To help address the inconsistencies and deficiencies in the record, the lead prosecutor submitted an affidavit explaining that he made the July 15, 2013 representation that the UAD would apply in this case based on his general awareness that the UAD "was the primary vehicle used to return inmates serving sentences in other jurisdictions to Delaware for trial."[62] As of July 15, 2013, the prosecutor assumed that the UAD's 120-day time limit would apply.[63] Following his consultation with the DDOJ Extradition Unit, however, the prosecutor came to believe that the UAD would not apply to Harris or Brown because the State would not request custody pursuant to the UAD.[64]

While the prosecutor's consultation with the DDOJ Extradition Unit sheds

---

[59] *Id.* at 81:2–12.
[60] D.I. 126.
[61] D.I. 129, September 28, 2016 Office Conference Transcript at 5:13–11:4.
[62] D.I. 132.
[63] *Id.*
[64] *Id.*

light on his belief that the UAD does not apply in this case because the State ultimately chose an alternative vehicle to secure the Defendants' return to Delaware, the prosecutor's affidavit does not explain his assertion at the March 2, 2015 office conference that the UAD "does not apply in capital cases." Nothing in the text of the UAD prohibits use of the UAD to transfer capital-eligible defendants, a fact the prosecutor recited immediately after asserting that the UAD does not apply in capital cases.[65] The only explanation proffered for the UAD's alleged total inapplicability to capital cases was offered at the March 2, 2015 office conference: "general acclimation."[66]

## III. PARTIES' CONTENTIONS

Harris argues that 11 *Del. C.* §§ 2543–44 mandate dismissal of the remaining charges in the indictment because the State failed to bring him to trial within 120 days of his return to Delaware.[67] Harris maintains that, in light of *Mauro*, the Governor's Warrant used in this case constitutes a "written request for temporary custody" that triggers the UAD's 120-day time limit.[68] Finally, Harris acknowledges that the UAD's 120-day time limit may be waived by a defendant or tolled by a properly granted continuance, but maintains that he never waived his rights and the State never sought a continuance for good cause shown within the

---

[65] D.I. 22, March 2, 2015 Office Conference Transcript at 7:4–14.
[66] *Id.*
[67] D.I. 108 ¶¶ 13–14; D.I. 114.
[68] D.I. 108 ¶¶ 7–14.

120-day time limit.[69]

In opposition, the State argues that the UAD's 120-day time limit is inapplicable to this case because the State returned Harris to Delaware on a Governor's Warrant.[70] According to the State, a Governor's Warrant is separate and distinct from a § 2543 "written request for temporary custody" that triggers the UAD's 120-day time limit.[71]

Further, the State argues that, if the Court finds that the UAD's 120-day time limit applies, Harris waived his rights under § 2543 when he agreed to a trial date more than 120 days after his return to Delaware.[72] If the Court finds the UAD applicable and finds that Harris did not waive his rights, the State argues that good cause existed to hold trial more than 120 days after Harris's return to Delaware.[73]

---

[69] D.I. 114 at 3–4.
[70] D.I. 113 ¶¶ 11–13.
[71] Id.
[72] Id. ¶¶ 18–21.
[73] Id. ¶ 22.

14

## A. The Uniform Agreement on Detainers

In 1969, the Delaware legislature enacted the UAD,[74] which "is designed in part to protect the rights of prisoners who have outstanding detainers lodged against them by another jurisdiction."[75] The preamble elaborates that "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation."[76] As such, the purpose of the UAD is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."[77]

Pursuant to the express language of 11 *Del. C.* § 2543(c), once the State has lodged a detainer and made a written request for temporary custody, it must bring the untried indictment, information, or complaint to trial within 120 days of the defendant's arrival in Delaware.[78] A detainer is "a request by the receiving state

---

[74] 11 *Del. C.* §§ 2540–50; *see also supra* note 2.
[75] *State v. Slaughter*, 152 A.3d 1275, 1280 (Del. Super. 2017) (citing 11 *Del. C.* § 2540).
[76] 11 *Del. C.* § 2540.
[77] *Id.*
[78] Alternatively, a prisoner against whom a detainer has been lodged may request final disposition of the charges rather than waiting for the State to file a written request for temporary custody. 11 *Del. C.* § 2542. If a prisoner "shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the

for the sending state to detain the prisoner or to send notification when the prisoner is about to be released."[79] Under the UAD, a detainer is distinct from a "written request for temporary custody."[80] The detainer serves to put officials in the sending State "on notice that the prisoner is wanted in another jurisdiction," whereas a "written request" represents "[f]urther action [which] must be taken by the receiving State in order to obtain the prisoner."[81]

Once the receiving State lodges a detainer against a prisoner with sending State prison officials, the UAD, by its express terms, becomes applicable and the receiving State must comply with its provisions.[82] The Court may toll the UAD's 120-day time limit upon a showing of good cause in open court in the presence of the defendant or the defendant's counsel.[83] If the State fails to bring the matter to trial within 120 days or within the time allowed by a properly sought and granted continuance, the UAD requires that the matter be dismissed with prejudice.[84] The

---

place of imprisonment and the request for a final disposition to be made of the indictment," then the State has 180 days to bring the matter to trial. *Id.* Neither the State nor Harris contends that Harris made a § 2542 request for final disposition.

[79] *Bruce v. State*, 781 A.2d 544, 548 n.3 (Del. 2001). Similarly, the United States Supreme Court has defined a detainer under the IAD as "a request by the State's criminal justice agency that the institution in which the prisoner is housed to hold the prisoner for the agency or notify the agency when release is imminent." *Hill*, 528 U.S. at 112.

[80] *Mauro*, 436 U.S. at 360–61.

[81] *Id.* at 358.

[82] *Id.* at 361–62.

[83] 11 *Del. C.* § 2543(c).

[84] *Id.* § 2544(c) ("[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in § 2542 or § 2543 of this title, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending *shall enter an order dismissing the same with*

16

burden of compliance with the procedural requirements of the UAD rests upon the State.[85]

## B. *United States v. Mauro*

In *United States v. Mauro*, the United States Supreme Court addressed the scope of the government's obligations under the IAD and, in particular, whether a writ of habeas corpus *ad prosequendum* could constitute a detainer or "written request" within the meaning of the IAD.[86]

The United States Supreme Court held that when a State files a detainer against a prisoner and then obtains custody of that prisoner by means of a writ of habeas corpus *ad prosequendum*, the writ constitutes a "written request" within the meaning of the IAD.[87] Once the detainer is lodged, the IAD by its express terms becomes applicable, and the State must comply with its provisions.[88] Thus, "whenever the receiving State initiates the disposition of charges underlying a detainer it has previously lodged against a state prisoner," the IAD requires commencement of trial within 120 days of the defendant's arrival in the receiving State.[89]

---

prejudice . . .") (emphasis added).
[85] *Pittman v. State*, 301 A.2d 509, 514 (Del. 1973) ("The burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents."), *superseded on other grounds by statute*, 11 *Del C.* § 2542(g).
[86] *Mauro*, 436 U.S. at 344.
[87] *Id.* at 361–62.
[88] *Id.*
[89] *Id.* at 363–64.

The United States Supreme Court explained why a writ of habeas corpus *ad prosequendum* qualifies as a written request under the IAD as follows:

> [O]nce a detainer has been lodged, the United States has precipitated the very problems with which the [IAD] is concerned. Because at that point the policies underlying the [IAD] are fully implicated, we see no reason to give an unduly restrictive meaning to the term "written request for temporary custody." It matters not whether the Government presents the prison authorities in the sending State with a piece of paper labeled "request for temporary custody" or with a writ of habeas corpus *ad prosequendum* demanding the prisoner's presence in federal court on a certain day; in either case the United States is able to obtain temporary custody of the prisoner. Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the [IAD] requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending State. The fact that the prisoner is brought before the district court by means of a writ of habeas corpus *ad prosequendum* in no way reduces the need for this prompt disposition of the charges underlying the detainer. In this situation it clearly would permit the United States to circumvent its obligations under the [IAD] to hold that an *ad prosequendum* writ may not be considered a written request for temporary custody.[90]

This reasoning forms the core of Harris's argument that the protections of the UAD extend to cases where the State gains custody of a prisoner—against whom a detainer has been lodged—by means of a Governor's Warrant. However, the Court need not resolve the question of whether *Mauro* and the UAD's 120-day time limit applies to Harris's case because, as explained below, Harris, through counsel, waived the right to a trial within 120 days of his arrival in Delaware by

---

[90] *Id.* at 361–62.

18

requesting a trial date outside the 120-day window.[91]

## C. Waiver of the UAD's 120-Day Time Limit

The State lodged a detainer against Harris on April 5, 2013.[92] On November 14, 2014, Harris arrived in Delaware pursuant to a Governor's Warrant.[93] Thus, the March 2, 2015 office conference was held within 120 days of Harris's arrival.

In *New York v. Hill*,[94] the United States Supreme Court found that the defendant forfeited his right to seek dismissal for violation of the IAD's Article III time limit[95] by agreeing to a trial date outside that time limit.[96] In *Hill*, New York lodged a detainer against the defendant, who was incarcerated in Ohio.[97] The defendant requested disposition of the charges against him pursuant to Article III of the IAD.[98] Counsel for the defendant in *Hill* appeared in court and agreed to a

---

[91] *See Slaughter*, 152 A.3d at 1288.

[92] *See supra* note 10.

[93] The Court notes that the Office of Conflicts Counsel assigned Harris counsel on December 5, 2014, and lack of legal representation may toll the UAD's 120-day time limit. *See* 11 *Del. C.* § 2545(a) ("In determining the duration and expiration dates of the time periods provided in §§ 2542 and 2543 of this title, the running of the time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."); *Bruce*, 781 A.2d at 548, 550. Tolling the UAD's 120-day time limit for this period would not change the outcome in this case. The March 2, 2015 office conference—the critical event for determining waiver—fell within 120 days of Harris's arrival in Delaware even if the time period was not tolled.

[94] 528 U.S. 110 (2000).

[95] Article III of the IAD is codified at 11 *Del. C.* § 2542; it provides that when a defendant requests disposition of outstanding charges upon which a detainer has been lodged, the receiving state has 180 days to bring him or her to trial. *See supra* note 78.

[96] *Hill*, 528 U.S. at 113–18.

[97] *Id.* at 112.

[98] *Id.*

trial date outside Article III's time limit.[99] The United States Supreme Court held that by "willingly accepting treatment inconsistent with the IAD's time limits,"[100] the defendant, through counsel, waived his right to seek dismissal under Article III.[101]

As this Court recently noted in *State v. Slaughter*, a waiver of rights under the UAD need only be voluntary; it is not necessary for a waiver under the UAD to be knowing and intelligent.[102] A waiver of rights under the UAD need only be voluntary because it is a statutory right, not a constitutional right:

> While a waiver of statutory speedy trial rights need not comport with the standards applicable to a waiver of basic constitutional rights—that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant—a waiver of statutory rights must still be voluntary. *Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period.*[103]

In this case, defense counsel freely acknowledged at the March 2, 2015 office conference that he could not see the case "getting to trial before the second

---

[99] *Id.* at 113.

[100] *Id.* at 118.

[101] *Id.* at 113–18.

[102] 152 A.3d at 1290 (first citing *Yellen v. Cooper*, 828 F.2d 1471, 1474 (10th Cir. 1987); then citing *People v. Jones*, 495 N.W.2d 159, 161 (Mich. Ct. App. 1992); and then citing *Drescher v. Super. Ct.*, 218 Cal.App.3d 1140, 1148 (Cal. Ct. App. 1990)); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.").

[103] *Slaughter*, 152 A.3d at 1290 (emphasis added) (quoting *Drescher*, 218 Cal.App.3d at 1148); *see United States v. Lawson*, 736 F.2d 835, 837–38 (2d Cir. 1984) ("[M]ost of the courts of appeals that have considered the question of waiver under the IAD have concluded that a defendant need not know his or her rights under the statute in order to waive its protections.").

half of 2016." Following a discussion between the Court and the parties regarding the difficulties in scheduling an eight-week capital murder trial, defense counsel agreed to an October 2016 trial date, well beyond the UAD's 120-day time limit.[104]

By freely acquiescing to a trial date outside the UAD's 120-day time limit, Harris is now barred from seeking dismissal of his charges on the basis that he was not brought to trial within 120 days of his arrival in Delaware.

## V. CONCLUSION

Because Harris waived his right under 11 *Del. C.* § 2543(c) to be brought to trial within 120 days of his return to Delaware, Harris's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

---

[104] *Id.* at 27:11–29:18.